☑ Original    ☐ Dup 



# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>A red, Apple iPhone with a damaged screen/back plate (hereinafter referred to<br>as "Device A"); a black Apple iPhone inside a black rubber case (hereinafter<br>referred to as "Device B"); and a gray and black "etalk" cellular flip phone<br>(hereinafter referred to as "Device C") currently located at the North Central<br>HIDTA, 11548 West Theo Trecker Way, West Allis, Wisconsin. | )<br>)<br>)<br>)  Case No.   **23-M-300 (SCD)**<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before    **March 15, 2023**    *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to    Hon. Stephen C. Dries    .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of    _____    .

Date and time issued:    3/1/23. 9:00 am    _____
                                                                                    *Judge's signature*

City and state:    Milwaukee, WI    Hon. Stephen C. Dries, U.S. Magistrate Judge
                                                                            *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

   I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A
## Property to be Searched

A red, Apple iPhone with a damaged screen/back plate (hereinafter referred to as "Device A"); a black Apple iPhone inside a black rubber case (hereinafter referred to as "Device B"); and a gray and black "etalk" cellular flip phone (hereinafter referred to as "Device C"), all of which are currently located at the North Central HIDTA, 11548 West Theo Trecker Way, West Allis, Wisconsin.

1

# ATTACHMENT B

1.      All records on Devices A, B, and C described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1), and Title 18, United States Code, Sections 924(c), 922(g), and 922(o), and involve Lance CARR Jr., including but not limited to:

    a.  lists of customers and related identifying information;

    b.  types, amounts, and prices of drugs trafficked and money laundered as well as dates, places, and amounts of specific transactions;

    c.  any information related to sources of drugs and money and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

    d.  any information recording schedule or travel;

    e.  all bank records, checks, credit card bills, account information, and other financial records;

    f.  Photographs and/or videos depicting possession of drugs or money;

    g.  Any evidence related to either the ownership, purchase, or possession of drugs, money, firearms, or other assets; and

    h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2.      Evidence of user attribution showing who used or owned Devices A, B, and C at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.



CLERK'S OFFICE
A TRUE COPY
Mar 01, 2023
SJDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

# UNITED STATES DISTRICT COURT



for the

Eastern District of Wisconsin

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*

A red, Apple iPhone with a damaged screen/back plate (hereinafter referred to as "Device A"); a black Apple iPhone inside a black rubber case (hereinafter referred to as "Device B"); and a gray and black "etalk" cellular flip phone (hereinafter referred to as "Device C") currently located at the North Central HIDTA, 11548 West Theo Trecker Way, West Allis, Wisconsin.

)
)
)
)
)
)
)

Case No. **23-M-300 (SCD)**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1); 18 U.S.C §§ 924(c), 922(g), and 922(o). | Possession with intent to distribute controlled substances; possession of a firearm in furtherance of a drug trafficking crime; felon in possession of a firearm; possession of a machine gun. |

The application is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

RUSSELL A DYKEMA  Digitally signed by RUSSELL A DYKEMA
Date: 2023.02.28 14:53:24 -06'00'

*Applicant's signature*

Russell Dykema, DEA TFA

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ Telephone _____ *(specify reliable electronic means)*.

Date: _____ 03/01/2023 _____

*Judge's signature*

City and state: Milwaukee, WI

Hon. Stephen C. Dries, U.S. Magistrate Judge

*Printed name and title*

AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR SEARCH WARRANT

I, Special Agent Russell Dykema, being first duly sworn, hereby depose and state as follows:

## **INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—electronic devices—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2. I am a Task Force Agent with the Drug Enforcement Administration ("DEA"), currently assigned to the High Intensity Drug Trafficking Area (HIDTA) and have been since October of 2017. I am also currently a Special Agent with the U.S. Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, and have been since June of 2006.

3. As part of my duties as a DEA TFA and HSI SA, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the federal controlled substance laws, including, but not limited to Title 21, United States Code, Sections 841, 843, 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 922(o), and 924(c). Since 2006, I have investigated violations of federal law, directed drug and street gang investigations, obtained and

1

executed search and arrest warrants related to the distribution of illegal narcotics, and debriefed confidential informants and cooperating defendants. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

4. I have participated in several narcotics and firearms trafficking investigations that involved the seizure of computers, cellular phones, cameras, and other digital storage devices, and the subsequent analysis of electronic data stored within these computers, cellular phones, cameras, and other digital storage devices. On many occasions, this electronic data has provided evidence of the crimes being investigated and corroborated information already known or suspected by law enforcement.

5. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

9.      The property to be searched is described as a red, Apple iPhone with a damaged screen/back plate (hereinafter referred to as "Device A"), recovered during the execution of a search warrant on February 20, 2023 at 2450 W. Galena Street, in Milwaukee, Wisconsin; a black Apple iPhone inside a black rubber case (hereinafter referred to as "Device B"), recovered during the execution of a search warrant on February 20, 2023 at 2450 W. Galena Street, in Milwaukee, Wisconsin; and a gray and black "etalk" cellular flip phone (hereinafter referred to as "Device C"), recovered during the execution of a search warrant on February 20, 2023 at 2450 W. Galena Street, in Milwaukee, Wisconsin.  Devices A, B, and C were seized pursuant to a state search warrant signed by the Honorable Barry Phillips, Milwaukee County Court Commissioner, for the residence located at 2450 W. Galena Street.

10.     Devices A, B, and C are currently being stored at the North Central HIDTA located at 11548 West Theo Trecker Way, West Allis, Wisconsin.

11.     The applied-for warrant would authorize the forensic examination of Devices A, B, and C for the purpose of identifying electronically stored data more particularly described in Attachment B.

## PROBABLE CAUSE

12.     On February 20, 2023, case agents executed a state search warrant signed by the Honorable Barry Phillips, Milwaukee County Court Commissioner, for the

3

residence located at 2450 W. Galena Street, in Milwaukee, Wisconsin. LANCE CARR JR. aka "Red" (dob: XX/XX/1988) was listed as the target of the state search warrant, and the state search warrant authorized the search of the residence located at 2450 W. Galena Street; a black 2004 Toyota Solara coupe bearing Wisconsin registration plate AFC1534 (VIN# 4T1CA30P54U018027); and a white Kia Stinger 4-door bearing Mississippi disabled license plate of P4015 (VIN# KNAE55LCXJ6040351).

13.    Upon entry, case agents encountered CARR in the kitchen of the residence located at 2450 W. Galena Street. During the execution of the search, case agents recovered the following from the kitchen:

• a red, Apple iPhone with a damaged screen and damaged back plate (Device A) located on top of the kitchen counter;

• a black FN Five-Seven, 5.7X28mm handgun, bearing serial no. 386268307,with a magazine that contained twenty (20) unspent 5.7X28mm cartridges and one (1) unspent 5.7x28mm cartridge in the chamber of the firearm, was recovered from the breakfast bar countertop;

• a clear plastic sandwich bag containing an off-white, chunky substance, which tested positive for the presence of cocaine with a total weight of 2.17 grams; a clear sandwich bag containing a tan, chunky substance, which tested positive for the presence of fentanyl with a total weight of 4.77 grams; and an orange pill bottle with the label torn off, containing 5 pills that were round, green in color, with the stamping of the letter "K"

4

and the number "8" on the surface of the pill, believed to be 15 mg Oxycodone Hydrochloride pills; were recovered from a black Gucci brand bag that was hanging on a chair at the breakfast bar countertop;

- a clear sandwich bag containing a tan chunky substance, which tested positive for the presence of fentanyl with a total weight of 7.76 grams, was recovered from a kitchen cabinet shelf;

- a clear sandwich bag containing a blue powdery substance, which tested positive for the presence of methamphetamine, with a total weight of 2.69 grams, was recovered from a kitchen cabinet shelf;

- a clear sandwich bag containing a tan chunky substance, which tested positive for the presence of fentanyl with a total weight of 1.43 grams;

- two (2) black digital gram scales were recovered; one on the kitchen counter and the other was in the drawer to the right of the stove;

- two (2) boxes of Winchester brand 5.56 green tip ammunition were located along the north wall on top of the refrigerator inside a cardboard box;

- one (1) box of Rifleline brand 300 Blackout ammunition was located on top of the refrigerator; and

- three items of mail addressed to CARR were located on top of the refrigerator, including a Spectrum billing statement for CARR that was located inside the cardboard box with the two (2) boxes of Winchester ammunition listed above.

5

14.     During the execution of the search, case agents recovered the following from the southwest bedroom, which appeared to be CARR's bedroom:

- a black, Apple iphone inside of a black rubber phone case (Device B) located on the bed;

- a gray and black "etalk" brand cellular flip phone (Device C) located on the top of the mirrored dresser;

- a tan Glock, Model 19x, 9mm handgun, bearing serial number BTRR911, with an aftermarket handgrip/light/laser, and with a black dual drum magazine that contained one hundred (100) unspent 9mm cartridges and there was one (1) unspent 9mm cartridge in the chamber of the firearm, was recovered from the top shelf of the south closet;

- a SCCY, CPX-2, 9mm handgun, with a white grip and black slide, bearing serial number 704056, with a magazine containing six (6) unspent 9mm cartridges and there was one (1) unspent 9mm cartridge in the chamber of the firearm, was recovered from the top left drawer of the mirrored dresser in the room;

- a tan JMT lower, multi-caliber, AR pistol, with no serial number, outfitted with a forearm brace, a for end pistol grip, a laser, an optic on the top accessory rail, and a brass catcher which would collect any spent casing ejected from the firearm, and containing a black UTC thirty (30) round magazine containing twenty-four (24) unspent 300 blackout cartridges was recovered from a grey bag on the bed;

6

- a box of Rifleline brand 300 blackout ammunition was recovered from the floor near the south closet;

- a tan Glock magazine loaded with 9mm ammunition was recovered from the top of the mirrored dresser;

- a thirty (30) round rifle magazine loaded with 300 Blackout ammunition and an empty twenty (20) round magazine for a 5.7x28mm firearm were recovered from a shoe box located next to the bedroom door;

- a black men's wallet containing credit cards and identification for CARR was located inside a pair of black sweatpants that were next to the mirrored dresser in the bedroom; and

- a State of Wisconsin birth certificate and a Social Security Administration card for CARR was tucked into the mirror of the mirrored dresser.

15.     During the search of the basement of CARR's residence, case agents recovered the following:

- a tan JMT lower, AR Pistol with no serial number, with a laser attached to the fore end and no magazine, was recovered from a blue duffle bag on a shelf along the south wall;

- a black leather duffle bag with the NHL logo containing seven (7) boxes of 9mm ammunition, six (6) boxes of 300 blackout ammunition, three (3) boxes of 5.56 ammunition, one (1) box of .45 caliber ammunition, one (1) box of .40 caliber

7

ammunition, two (2) boxes of 7.62 ammunition, and one (1) box of assorted ammunition, and two (2) black thirty (30) round rifle magazines loaded with 7.62 caliber ammunition was recovered from a shelf along the south wall;

- a black nylon duffle bag containing seven (7) boxes of 300 Blackout ammunition, three (3) boxes of 5.56 ammunition, two (2) boxes of 7.62 ammunition, two (2) boxes of .40 caliber ammunition, four (4) boxes of 9mm ammunition, one (1) box of .22 caliber ammunition, and one (1) box of .223 caliber ammunition, two (2) black metal rifle magazines loaded with 7.62 ammunition, one black UTC thirty (30) round magazine loaded with 5.56 ammunition, one (1) sixty (60) round magazine loaded with 5.56 ammunition, four (4) 30 round magazines loaded with 300 Blackout ammunition, one (1) thirty (30) round magazine loaded with 5.56 ammunition, and one (1) two hundred (200) round drum magazine loaded with 5.56 ammunition was recovered from along the north wall of the basement;

- five (5) suspected "Swift-Links" or "Lightning Links", which are Machine Gun Conversion Devices (MCDs), see photograph below, were recovered from the front pocket of the above-described black nylon duffle bag:



16.     The photograph above was reviewed by Alcohol, Tobacco, and Firearms (ATF) Special Agent Dalton Evertz who determined, based upon his training and experience, that all five (5) items depicted above are suspected machine gun conversion devices (MCDs).

17.     The National Firearms Act (NFA), 26 U.S.C. § 5845(b), defines "machinegun" as— "…any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more than one shot, without manual reloading, by a

single function of the trigger. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person." Additionally, a "Swift-Link"/"Lightning Link" is a part designed and intended solely and exclusively for use in converting a weapon into a machinegun, thus it is a "machinegun" as defined in 26 U.S.C. § 5845(b).

18.    During the search of the Kia Stinger, case agents recovered the following:

•    a white Nutribullet brand blender with suspected narcotics residue was located in the trunk;

•    a hydraulic floor jack with silver metal components attached to compress a powdered substance into a solid form, i.e., a "kilo press," with suspected narcotics residue on it, was located in the trunk;

•    a black Weight Max brand digital gram scale was located in the center console of the passenger compartment; and

•    a black plastic firearm scope located in the glove compartment.

19.    Based upon their training and experience, case agents are aware that fentanyl distributors will regularly obtain a quantity of narcotics and then utilize cutting agents or fillers to stretch the amount of product to increase profits. This is typically done by placing the narcotics and the cutting agent into a blender and combining the two

10

substances. Once this is accomplished the narcotics distributor will then need to compress the product back into a solid form before distribution. This can be accomplished by utilizing what is known as a "kilo press" or a hydraulic jack fitted with metal components to compress the powder back into a solid. The "kilo press" seized from the trunk of the Kia Stinger appears to have been designed to create 100 gram quantities by its size and dimensions.

20. Following the execution of the search warrant at 2450 W. Galena Street, case agents arrested CARR and interviewed CARR. CARR was read his *Miranda* rights verbatim from a State of Wisconsin, Department of Justice, *Miranda* waiver card, and CARR stated that he understood his rights and was willing to make a statement. CARR stated that the FN Five-Seven firearm recovered from the residence belongs to him. CARR stated that he obtained the firearm from someone on the street in exchange for $60 of crack cocaine. CARR would not admit to knowledge of any of the other firearms in the residence. CARR admitted to possessing all of the narcotics recovered in the residence and stated that they were for personal use.

21. The tan JMT AR pistol (no serial number) recovered from the southwest bedroom was found to have a MCD installed in the fire control cavity of the AR pistol. On February 21, 2023, a Firearms Enforcement Officer examined and test fired the JMT AR pistol with machine gun conversion device, and concluded that, with its installed conversion device, is a weapon which shoots automatically, more than one shot, without

11

manually reloading, by a single function of a trigger; therefore, it is a "machinegun" as defined in Title 18, United States Code, Section 921(a)(23) and Title 26, United States Code, Section 5845(b). Additionally, the conversion device, in and of itself, being a combination of parts designed and intended, for use in converting a weapon into a machinegun, is a "machinegun" as defined in Title 18, United States Code, Section 921(a)(23) and Title 26, United States Code, Section 5845(b).

22.     Further, the firearms seized from CARR's residence were subject to National Integrated Ballistic Information Network (NIBIN) testing and the following results were returned:

- the Glock 19x, 9mm handgun, bearing serial number BTRR911 was linked to 4 separate Endangering Safety by Use Of a Dangerous Weapon (ESBUODW) events within the City of Milwaukee:

  - ESBUODW 22-274-0165 on 10/01/22 at 3403 N. 45th St.

  - ESBUODW 22-076-0007 on 03/17/2022 at 4109 N. 23rd St.

  - ESBUODW 22-242-0131 on 08/30/22 at 4726 N. 30th St

  - ESBUODW 21-343-0066 on 12/09/2021 at 1602 W. Lloyd St.;

- the FN Five-Seven, 5.7X28 handgun, bearing serial number 386268307, was linked to a Recklessly Endangering Safety (RES)-Shooting event within the City of Milwaukee:

  - RES Shooting 22-145-0022 on 05/25/22 at 7128 W. Medford St.

12

23.     Case agents are aware based upon review of Milwaukee Police Department reports that CARR is listed as a possible suspect in the shooting that occurred at 7128 W. Medford Street on May 25, 2022.

24.     Review of court records reveals that CARR has a prior felony conviction for Possession of a Narcotic Drug (heroin)- Party to a Crime, a class I felony in Milwaukee County Circuit Case No. 2013CF003687.   On November 18, 2013, CARR pled guilty to the aforementioned offense and was advised by the court that he is a convicted felon and he is never to possess any firearms.

25.     Case agents further determined that the tan Glock 19X, 9 mm handgun, bearing serial no. BTRR911; the SCCY CPX-2 9mm handgun, bearing serial number 704056; the FN Five-Seven. 5.7X28 handgun; the tan JMT AR pistol bearing no serial number; and the tan JMT AR pistol bearing no serial number; were not manufactured in the State of Wisconsin and therefore, traveled in interstate commerce prior to CARR's possession of them on February 20, 2023.

26.     Through affiant's training, experience, and discussions with other experienced law enforcement officers, affiant is familiar with the ways in which drug traffickers conduct their unlawful trade, including their methods of distribution, their use of communication devices, their use of coded communications to conduct their transactions, the employment of counter surveillance, their use of false or fictitious

13

identities, and their use of various forms of electronic devices to store and/or conceal illegal activity.

27. Based upon my training and experience, affiant knows that individuals involved in drug trafficking and possession of illegal firearms frequently use cellular telephones to maintain contact and arrange transactions with their sources and customers of and co-conspirators in the distribution of controlled substances and illegal firearms. Affiant has also found it very common for crime suspects to use their cellular telephones to communicate aurally or via electronic message in "text" format with individuals whom they purchase, trade, or otherwise negotiate to obtain illegal drugs and firearms.

28. Based on my training and experience, affiant is aware that individuals involved in trafficking controlled substances, possession of machine guns often possess multiple cellular devices to compartmentalize their illegal activity and to avoid law enforcement detection.

29. Based upon my training and experience, affiant believes it is common for crime suspects who possess illegal controlled substances to often take or cause to be taken photographs and other visual depictions of themselves, their associates, and the illegal controlled substances and proceeds of drug trafficking. Furthermore, affiant believes it is common for these photographs and visual depictions to be kept and maintained on their cellular devices.

14

30.     Devices A, B, and C are currently in storage at the North Central HIDTA, 11548 West Theo Trecker Way, West Allis, Wisconsin.  In my training and experience, I know that Devices A, B, and C have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when Devices A, B, and C first came into the possession of the Milwaukee Police Department.

## TECHNICAL TERMS

31.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera:  A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film.  Digital cameras use a variety of fixed and removable storage media to store their recorded images.  Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate

15

reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable

16

storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Tablet: A tablet is a mobile computer, typically larger than a phone yet smaller than a notebook, that is primarily operated by touching the screen. Tablets function as wireless communication devices and can be used to access the Internet through cellular networks, 802.11 "wi-fi" networks, or otherwise. Tablets typically contain programs called apps, which, like programs on a personal computer, perform different functions and save data associated with those functions. Apps can, for example, permit accessing the Web, sending and receiving e-mail, and participating in Internet social networks.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

17

32.     Based on my training, experience, and research, I know that Devices A, B, and C have the capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA, and all have the ability to access the internet.  In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the devices.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

33.     Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

34.     There is probable cause to believe that things that were once stored on Devices A through C, may still be stored there, for at least the following reasons:

a.      Based on my knowledge, training, and experience, I know that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a storage medium, deleted, or viewed via the Internet.  Electronic files downloaded to a storage medium can be stored for years at little or no cost.  Even when files have been deleted, they can be recovered months or years later using forensic tools.  This is so because when a person "deletes" a file on a computer, the data contained in the file does not actually disappear; rather, that data remains on the storage medium until it is overwritten by new data.

b.      Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the storage medium that is not currently being used by an active file—for long periods of time before they

18

are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

c.   Wholly apart from user-generated files, computer storage media—in particular, computers' internal hard drives—contain electronic evidence of how a computer has been used, what it has been used for, and who has used it. To give a few examples, this forensic evidence can take the form of operating system configurations, artifacts from operating system or application operation, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible to delete this information.

d.   Similarly, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache."

35.   *Forensic evidence.*   As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

a.   Data on the storage mediums can provide evidence of a file that was once on the storage mediums but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage mediums that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record

19

information about the dates files were created and the sequence in which they were created.

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

36.  *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrants I am applying for would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

37.  *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not

20

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**<u>CONCLUSION</u>**

38. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of Devices A, B, and C, further described in Attachment A, to seek the items described in Attachment B.

**ATTACHMENT A**
**Property to be Searched**

A red, Apple iPhone with a damaged screen/back plate (hereinafter referred to as "Device A"); a black Apple iPhone inside a black rubber case (hereinafter referred to as "Device B"); and a gray and black "etalk" cellular flip phone (hereinafter referred to as "Device C"), all of which are currently located at the North Central HIDTA, 11548 West Theo Trecker Way, West Allis, Wisconsin.

1

# ATTACHMENT B

1.      All records on Devices A, B, and C described in Attachment A that relate to violations of Title 21, United States Code, Sections 841(a)(1), and Title 18, United States Code, Sections 924(c), 922(g), and 922(o), and involve Lance CARR Jr., including but not limited to:

      a.  lists of customers and related identifying information;

      b.  types, amounts, and prices of drugs trafficked and money laundered as well as dates, places, and amounts of specific transactions;

      c.  any information related to sources of drugs and money and co-conspirators (including names, addresses, phone numbers, or any other identifying information);

      d.  any information recording schedule or travel;

      e.  all bank records, checks, credit card bills, account information, and other financial records;

      f.  Photographs and/or videos depicting possession of drugs or money;

      g.  Any evidence related to either the ownership, purchase, or possession of drugs, money, firearms, or other assets; and

      h.  Records of Internet activity, including browser history, search terms that the user entered into any Internet search engine, and records of user-typed web addresses

2.      Evidence of user attribution showing who used or owned Devices A, B, and C at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

1

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

2